The controversj' in this case was, whether a writing purporting to be the last will and testament of Richard Squire Taylor, late of King William County, was his last will and testament or not. It was exhibited for probate in the County Court, on Monday, the 27th of October, 1806; and (there being no subscribing witness) was proved by two witnesses to be, as they believed, altogether in the hand-writing of the said Taylor; whereupon sundry witnesses were sworn and examined, and other evidence heard touching his competency to execute a will; and the Court, being of opinion that he was not of sound mind and memory at the time the said instrument of writing was executed, refused to admit it to record. On an appeal to the District Court holden at King and Queen Court-house, the transcript .of the record of the decision aforesaid, as well as the original writing being seen and inspected, and divers witnesses sworn and examined, tne decision was reversed, and the bill admitted to record; from which judgment an appeal was taken to this Court.
The evidence before the Court of Appeals (where a number of witnesses on both sides were examined viva voce and the original *214 will was also produced) was various and contradictory, as to their opinions concerning the state of Richard Squire Taylor’s mind towards the close of his *life; particularly about the time when the writing was dated: but it was clearly proved by three witnesses, that the whole was written and signed by himself.
Many objections were made, in argument, to the tenor of the writing itself as proving that he could not have been in his senses when he wrote it; many passages being ungrammatical and incorrect, notwithstanding he was once a man of good sense and skilful in business; a part of his prop-ert3r not being mentioned at all; and some bequests of a strange nature occurring; among which was one, in which he gave a part of his horses and cattle to his daughter Elizabeth Meux, and a part of his sheep to James Meux her husband. From this it was inferred that his intellects were impaired, to such a degree, that he was not capable of rationally disposing of his property; since he appeared to have forgotten that a wife could not .hold (without the intervention of a trustee) a separate estate from her husband, in personal property. A.s the arguments of counsel consisted chiefly of endeavours to invalidate or maintain the credibility of the witnesses; of criticisms (on one side) on the inaccurate language and omissions in the will; and of attempts (on the other) to repel the effect of those objections; they cannot be more minutely inserted, consistently with the plan of this work.
Saturday, October 24. The Judges delivered their opinions.
JUDGE TUCKER.
It having been proved to this Court by the evidence of three credible and respectable witnesses, who were well acquainted with the deceased, Richard Squire Taylor, that the paper-writing exhibited in this court, purporting to be the last will and testament of the said Richard Squire Taylor, was wholly written by himself, that circumstance, prima facie, amounts to presumptive proof of his deliberate intention and capacity to make a will at the time of writing the same: and neither the testimony of the witnesses examine in this Court, touching the mental debility of the testator for a considerable period before his death, and before the date of that will, nor any internal evidence arising from the will itself, appear to me sufficient to repel that presumption, and to set aside the will on the presumption of the testator’s incapacity to dispose of his estate at the time of making the said will. I am therefore of opinion that the judgment be affirmed.
* JUDGE FEEMING.
A great number of witnesses have been examined on this occasion, all of whom seem to be men of respectability, and worthy of credit, though there is some difference in opinion among them respecting the state of the testator’s mind towards the latter part of his life; particularly, about the time of his making his will; but, from the general tenor of their collected testimony, it appears that he was once a man of sound understanding, well acquainted with business, and of exemplary moral character; that, from family misfortunes, and the loss of an affectionate wife, and of his eldest son in his advanced age, he became dejected, and» melancholy, and was apt to make an imprudent use of opium and of ardent spirits, by which means his intellects were greatly impaired; and that at particular times, when he indulged himself in too free a use of spirits, he was incapable of business, but, at other times, when he abstained from the use of strong liquor, and kept himself cool, he was able to transact business with tolerable accuracy. It appears, however, that some of the witnesses were mistaken when they gave an opinion that, after the misfortunes in his family, he was. incapable of writing two lines with tolerable correctness, when it appears that, in May 1805, about five months before the date of his will, he wrote a letter to Mr. Robert Temple on business of importance with as much propriety and perspicuity as he, perhaps, ever could have done any period of his life; and the will itself, (which is proven by three respectable witnesses to be wholly in his own hand-writing) though not technically correct, is sufficiently so to evince that those witnesses were very much mistaken : and, although the whole of his estate is not thereby disposed of, the most material and valuable part of it is given to different members of his family; and in such a manner too as he had often been heard to declare he intended before his understanding became impaired.
It is also in evidence that, in the summer of 1806, eight or nine months after the date of his will, when, from the circumstances before stated, his mental powers may be supposed to have been still on the decline, he conversed with some of the witnesses very sensibly on different subjects, and particularly on that of his having altered his will after the death of his son Richard; that, in June, 1806, he executed a deed to. Mr. Meux for a tract of land which the latter had purchased of Richard Taylor, jr. the title being in himself and not in the said Richard, which deed was recorded in the County Court of King William; and, *in July following, he settled with Col. T. Tinsley a long account of several years’ standing with propriety and accuracy.
These circumstances induce me to concur in opinion that the testator was competent to make a will, and that the judgment of the District Court ought to be affirmed.
JUDGE EYONS concurred; and the judgment was unanimously affirmed.